## Case No. 16,559.

UNITED STATES v. TWENTY CASES OF MATCHES.

[2 Biss. 47;[1] 10 Int. Rev. Rec. 95; 2 Am. Law T. Rep. U. S. Cts. 48; 1 Chi. Leg. News, 145.]

District Court, D. Wisconsin. Oct., 1868.

CUSTOMS LAWS—LANDING WITHOUT PERMIT—FORFEITURES—INFORMATION.

1. Goods landed without a permit from the proper collector, and naval officer, if any, are subject to forfeiture to the United States.

2. It is no defence that the unlading was without the knowledge or consent of the owner or consignee; that it was at an intermediate port and not at the port of destination; and that it was an unlawful act on the part of the master. The forfeiture attaches upon the unlawful unlading, wherever that may be.

3. The facts that these goods were the production of the United States, and simply transported through a foreign country, and were exempt from duty and that all the laws and regulations relating to such transit had been strictly complied with, does not remove the necessity of procuring a permit.

4. The information is well brought under the 50th section of the act of March 2, 1799 [1 Stat. 665].

Information for violation of the revenue law.

J. B. D. Cogswell, U. S. Dist. Atty.

Palmer, Hooker & Pitkin, for respondents.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

MILLER, District Judge. The information propounds that the matches were seized at Milwaukee on land. It charges that they were brought in the propeller Montgomery, from Sarnia in Canada; and were unladen from said vessel at the port of Milwaukee without a permit from the collector of said port, there being no naval officer.

It is alleged in the answer of claimants that they manufactured the matches at Portland, in the state of Maine, and packed them in close cases, and shipped them at Portland for Chicago in the state of Illinois, on the Grand Trunk Railway, a corporation of Canada extending from Portland to Sarnia; that the matches were not intended to be delivered at Sarnia, or at Milwaukee, but were shipped direct to Chicago, and to be transported by lake from Sarnia to Chicago. For that purpose the matches were shipped on board the Montgomery, a vessel employed by said railway company running in connection with the railway from Sarnia to Chicago, thereby furnishing a through line from Portland to Chicago. The boxes of matches were unladen from the propeller by the master, at Milwaukee without the knowledge or consent of claimants, and contrary to the agreement under which they were shipped and transported by said railway company. And they were not so unladen with intention of vending them in the district of Wisconsin, or of avoiding any law of congress, or any regulation of the treasury department, or of avoiding the payment of government charges. The answer further pleads and sets out at length the regulations of the treasury department for the transportation of goods through Canada.

The district attorney filed exceptions to the answer, as not being responsive to the information, and no defense against the alleged cause of seizure. Section 50 of the act to regulate the collection of duties on imports and tonnage, approved March 2, 1799 (1 Stat. 665), directs, "that no goods, wares or merchandise brought in any ship or vessel from any foreign port or place shall be unladen or delivered from such ship or vessel, within the United States * * * without a permit from the collector, and naval officer, if any, for such unlading or delivery." The section imposes a penalty for such unlading or delivery, and authorizes the seizure of such goods, wares and merchandise as forfeited; and when their value amounts to four hundred dollars at the port or district where landed, the vessel is also declared subject to like forfeiture and seizure. The seizure was made under this section of the statute.

Milwaukee is a port intermediate the ports of Sarnia and Chicago. The goods could not be delivered at this port without the consent of the owner or consignee. They were put ashore or unladen at this port by the master of the vessel, without the consent of the owner or consignee, and without the required permit. It was an unlawful act on the part of the master of the vessel, if within the prohibition of the section of the act above quoted.

It will be observed that the section embraces all cases of unlading of goods without a permit within the United States. The forfeiture attaches whether the unlading is at an intermediate port, or at the port of destination and delivery, or at any place within the United States. The public mischief is equally great whether the unlawful lading is at a port or elsewhere. The object of the law is to prevent frauds upon the revenue. In the case of The Industry [Case No. 7,028], goods were unladen at an intermediate port without the required permit, and the seizure was sustained. It was contended that the information should have been brought under section 27 of the act, as in U. S. v. The Virgin [Id. 16,625]; U. S. v. Brant [Id. 14,637]; U. S. v. The Hunter [Id. 15,428]. I am satisfied that the information is well brought under section 50 of the act, and that the goods were prima facie subject to seizure at the port of Milwaukee. The onus probandi is thrown on the claimants, and if they fail to remove the presumptions which the law raises, condemnation must follow. The Luminary, 8 Wheat. [21 U. S.] 407. The act to prevent smuggling approved June 27, 1864 (13 Stat. 197), made it the duty of the propeller to put into the port of Milwaukee, the first American port of entry on her route from Sarnia. By chapter 68, approved March 2, 1861 (12 Stat. 194), "goods, wares and merchandise, the growth, production or manufacture of the United States, exported to a foreign country, and brought back to the United States in the same condition as when exported, upon which no drawback or bounty has been allowed, are exempt from duty, provided: that all regulations to ascertain the identity thereof, prescribed by existing laws, or which may be prescribed by the secretary of the treasury, shall be complied with." The matches in every particular were within this act, and were free of duty. The regulations of the treasury department relate to the transportation of goods while in their transit through the foreign country. These regulations may have been strictly complied with, but they have no relation to the duty imposed on the vessel to procure a permit for unlading the matches at the port of Milwaukee.

The law under which this information is brought, prohibits the unlading or delivery of goods, wares or merchandise brought from any foreign port or place, whether they be dutiable, or not, without the permit of the collector. Nor is it any excuse or defense, that the master of the vessel put the goods ashore without the knowledge or consent of the owner or consignee. The revenue laws leave all errors or mistakes of shippers and carriers to be settled among the parties interested. The answer is not responsive to the information, and the exceptions thereto must be sustained.